1  **BRODSKY & SMITH**
   Evan J. Smith, Esquire (SBN 242352)
2  esmith@brodskysmith.com
   Ryan P. Cardona, Esquire (SBN 302113)
3  rcardona@brodskysmith.com
   9595 Wilshire Boulevard, Suite 900
4  Beverly Hills, CA 90212
   Phone: (877) 534-2590
5  Facsimile: (310) 247-0160

6  *Attorneys for Plaintiff*

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10  ROBERTO PEPE,                          Case No.:

11                        Plaintiff,        **Complaint For:**

12         vs.                              (1)  Violation of § 14 (a) of the Securities
                                                 Exchange Act of 1934
13  GLOBAL BLOOD THERAPEUTICS,              (2)  Violation of § 20(a) of the Securities
    INC., TED W. LOVE, SCOTT                     Exchange Act of 1934
14  MORRISON, DEVAL L. PATRICK,
    MARK L. PERRY, GLENN PIERCE,           **JURY TRIAL DEMANDED**
15  PHILLIP PIZZO, DAWN SVORONOS,
    ALEXIS A. THOMPSON, and WENDY
16  YARNO,

17                        Defendants.

18
19         Plaintiff, Roberto Pepe ("Plaintiff"), by and through his attorneys, alleges upon information

20  and belief, except for those allegations that pertain to him, which are alleged upon personal

21  knowledge, as follows:

22                          **SUMMARY OF THE ACTION**

23         1.      Plaintiff brings this stockholder action against Global Blood Therapeutics, Inc.

24  ("GBT" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual

25  Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a)

26  and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

27  Defendants' efforts to sell the Company to Pfizer, Inc. ("Parent") through merger vehicle Ribeye

28

Acquisition Corp. ("Merger Sub") (collectively with "Parent", "Pfizer") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 7, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Pfizer will acquire all of the remaining outstanding shares of GBT' common stock at a price of $68.50 per share in cash. As a result, GBT will become an indirect wholly-owned subsidiary of Pfizer.

3.      Thereafter, on August 19, 2022, GBT filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      Significantly, despite forming a Transaction Committee to oversee the Proposed Transaction, the Preliminary Proxy statement fails to disclose what powers that committee had in evaluating a potential transaction, including whether it had the power to veto a transaction not in the best interests of shareholders.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for GBT, provided by GBT management to the Board and the Board's financial advisors J.P. Morgan Securities LLC ("JP Morgan") and Centerview Partners LLC ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by JP Morgan and Centerview, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

### PARTIES

8.      Plaintiff is a citizen of Italy and, at all times relevant hereto, has been a GBT stockholder.

9.      Defendant GBT a biopharmaceutical company, engages in the discovery, development, and delivery of treatments for underserved patient communities with sickle cell disease. GBT is incorporated under the laws of the State of Delaware and has its principal place of business at 181 Oyster Point Blvd. South San Francisco, California 94080.  Shares of GBT common stock are traded on the Nasdaq Stock Exchange under the symbol "GBT".

10.     Defendant Ted W. Love ("Love") has been a Director of the Company at all relevant times. Love also serves as the Company's Chief Executive Officer ("CEO") and President.

11.     Defendant Scott Morrison ("Morrison") has been a director of the Company at all relevant times.

12.     Defendant Deval L. Patrick ("Patrick") has been a director of the Company at all relevant times.

13.     Defendant Mark L. Perry ("Perry") has been a director of the Company at all relevant times.

14.     Defendant Glenn Pierce ("Pierce") has been a director of the Company at all relevant times.

15.     Defendant Phillip Pizzo ("Pizzo") has been a director of the Company at all relevant times.

16.     Defendant Dawn Svoronos ("Svoronos") has been a director of the Company at all relevant times.

17.     Defendant Alexis A. Thompson ("Thompson") has been a director of the Company at all relevant times.

18.     Defendant Wendy Yarno ("Chainey") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 10 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Pfizer discovers, develops, manufactures, markets, distributes, and sells biopharmaceutical products worldwide. Pfizer is headquartered in New York, New York and its shares are traded on the New York Stock Exchange under the symbol "PFE."

21.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

1  District as to render the exercise of jurisdiction over defendant by this Court permissible under

2  traditional notions of fair play and substantial justice.

3      24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because GBT

4  maintains its principal offices in this district, and each of the Individual Defendants, as Company

5  officers or directors, has extensive contacts within this District.

6                          **SUBSTANTIVE ALLEGATIONS**

7  *Company Background*

8      25.    GBT a biopharmaceutical company, engages in the discovery, development, and

9  delivery of treatments for underserved patient communities with sickle cell disease (SCD). The

10  company offers Oxbryta tablets, an oral, once-daily therapy for SCD. It also evaluates the safety

11  and pharmacokinetics of single and multiple doses of Oxbryta in a Phase II a clinical trial of

12  adolescent and pediatric patients with SCD. In addition, the company is developing its lead product

13  candidate inclacumab, novel human monoclonal antibody, which is in Phase III a clinical trial to

14  reduce the incidence of painful vaso-occlusive crises, and resulting hospital admissions; and

15  GBT601, a hemoglobin polymerization inhibitor that is in Phase I development. It has a license

16  and collaboration agreement with Syros Pharmaceuticals, Inc. to discover, develop, and

17  commercialize therapies for SCD and beta thalassemia; and Sanofi S.A. to two early-stage research

18  programs in SCD. Global Blood Therapeutics, Inc. was incorporated in 2011 and is headquartered

19  in South San Francisco, California.

20      26.    The Company's most recent financial performance press release, revealing

21  financial results from the quarter preceding the announcement of the Proposed Transaction,

22  indicated sustained and solid financial performance.  For example, in the May 4, 2022 press release

23  announcing its 2022 Q1 financial results, the Company highlighted that it had achieved more than

24  1,200 new Prescriptions of Oxbryta in the first quarter, leading to net sales of $55.2 million.

25      27.    Speaking on these positive results, CEO Defendant Love commented on the

26  Company's positive financial results as follows, "In the first quarter, we achieved two major

27  milestones in our journey to expand patient access to Oxbryta," …… "In the U.S., we launched

28

Oxbryta for patients ages 4 to 11, including a new age-appropriate formulation, giving us the potential to expand our reach to more SCD patients. We've received positive feedback on the launch, with encouraging trends during the quarter in new prescriptions for this age group as well as some incremental growth for the ages 12 and older population. In addition, we received marketing authorization from the European Commission for Oxbryta, making it the first medicine approved in the EU that directly inhibits the molecular basis of sickling and destruction of red blood cells in SCD. This milestone is a key step on our path to reach patients in Europe, with an initial focus on launching in Germany and establishing reimbursement in key countries."

28.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by GBT.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused GBT to enter into the Proposed Transaction without providing requisite information to GBT stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

31.     The Preliminary Proxy Statement fails to adequately disclose why it was necessary to retain the services of two financial advisors in evaluating the Proposed Transaction, costing the Company over $126 million in fees.

32.     Further, despite appointing a Transaction Committee to oversee the Proposed Transaction, the Preliminary Proxy statement fails to disclose what powers that committee had in evaluating a potential transaction, including whether it had the power to veto a transaction not in the best interests of shareholders.

33.     Moreover, as revealed in the Preliminary Proxy, while the Transaction Committee was appointed to oversee the Sales process, members of management and the remaining directors routinely attended their meetings and participated in their decision making processes, calling into question any independence the Transaction Committee might claim.

34.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

36.     On August 8, 2022, GBT and Pfizer issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NEW YORK and SOUTH SAN FRANCISCO, Calif., Aug. 08, 2022 (GLOBE NEWSWIRE) --** Pfizer Inc. (NYSE: PFE) and Global Blood Therapeutics, Inc. (GBT) (NASDAQ: GBT) today announced the companies have entered into a definitive agreement under which Pfizer will acquire GBT, a biopharmaceutical company dedicated to the discovery, development and delivery of life-changing treatments that provide hope to underserved patient communities, starting with sickle cell disease (SCD). The acquisition complements and further enhances Pfizer's more than 30-year heritage in rare hematology and reinforces the company's commitment to SCD by bringing expertise and a leading portfolio and pipeline with the potential to address the full spectrum of critical needs in this underserved community. Pfizer intends to continue to build on the companies' shared commitment to and engagement with the SCD community.
>
> Under the terms of the transaction, Pfizer will acquire all the outstanding shares of GBT for $68.50 per share in cash, for a total enterprise value of approximately $5.4 billion, including debt and net of cash acquired. The Boards of Directors of both companies have unanimously approved the transaction.
>
> SCD is a lifelong, devastating inherited blood disorder impacting millions of people worldwide, predominantly in populations of African, Middle Eastern and South

Asian descent. GBT developed Oxbryta® (voxelotor) tablets, a first-in-class medicine that directly targets the root cause of SCD. Oxbryta was approved in the United States in November 2019 and is also approved in the European Union, United Arab Emirates, Oman and Great Britain. Net sales for Oxbryta were approximately $195 million in 2021. Leveraging its global platform, Pfizer plans to accelerate distribution of GBT's innovative treatment to parts of the world most impacted by SCD.

In addition, GBT is developing GBT021601 (GBT601), an oral, once-daily, next-generation sickle hemoglobin (HbS) polymerization inhibitor in the Phase 2 portion of a Phase 2/3 clinical study. GBT601 has the potential to be a best-in-class agent targeting improvement in both hemolysis and frequency of vaso-occlusive crisis (VOC). GBT's promising pipeline also includes inclacumab, a fully human monoclonal antibody targeting P-selectin which is being evaluated in two Phase 3 clinical trials as a potential quarterly treatment to reduce the frequency of VOCs and to reduce hospital readmission rates due to VOCs. Both GBT601 and inclacumab have received Orphan Drug and Rare Pediatric Disease designations from the U.S. Food and Drug Administration (FDA). If approved, GBT's pipeline and Oxbryta have the potential for an SCD franchise that could achieve combined worldwide peak sales of more than $3 billion.

"Sickle cell disease is the most common inherited blood disorder, and it disproportionately affects people of African descent. We are excited to welcome GBT colleagues into Pfizer and to work together to transform the lives of patients, as we have long sought to address the needs of this underserved community," said Albert Bourla, Chairman and Chief Executive Officer, Pfizer. "The deep market knowledge and scientific and clinical capabilities we have built over three decades in rare hematology will enable us to accelerate innovation for the sickle cell disease community and bring these treatments to patients as quickly as possible."

"Today is an exciting milestone that accelerates GBT's mission to discover, develop and deliver life-changing treatments that provide hope to underserved patient communities," said Ted W. Love, M.D., President and Chief Executive Officer, GBT. "Pfizer will broaden and amplify our impact for patients and further propel much-needed innovation and resources for the care of people with sickle cell disease and other rare diseases, including populations in limited-resource countries. We look forward to working together with Pfizer to serve our communities and advance our shared goal of improving health equity and expanding access to life-changing treatments to create a healthier future for all."

Pfizer expects to finance the transaction with existing cash on hand. The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by GBT's stockholders.

Due to the proposed transaction, GBT will not hold its previously scheduled conference call to discuss its second quarter 2022 financial results. The company

will file its quarterly report on Form 10-Q for the quarter ending June 30, 2022 with the U.S. Securities and Exchange Commission announcing those results on August 8, 2022.

Pfizer's financial advisors for the transaction are Morgan Stanley & Co. LLC and Centerview Partners LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. GBT's financial advisors for the transaction are J.P. Morgan Securities LLC and Centerview Partners LLC, with Cravath, Swaine & Moore LLP and Goodwin Procter LLP acting as legal advisors.

***Potential Conflicts of Interest***

37.     The breakdown of the benefits of the deal indicate that GBT insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of GBT.

38.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Beneficial Owner | Number of shares of GBT common stock beneficially owned | Percentage of shares of GBT common stock beneficially owned |
|---|---|---|
| **5% or Greater Stockholders:** | | |
| Entities affiliated with The Vanguard Group | 5,993,142 | 8.9% |
| Entities affiliated with Janus Henderson Group plc | 5,483,164 | 8.1% |
| Entities affiliated with BlackRock | 5,353,056 | 7.9% |
| Entities affiliated with Fidelity | 4,597,391 | 6.8% |
| Entities affiliated with Perceptive | 3,449,915 | 5.1% |
| Entities affiliated with Deep Track Capital | 3,646,690 | 5.4% |
| **Named Executive Officers and Directors:** | | |
| Ted W. Love, M.D | 1,633,646 | 2.4% |
| Jeffrey Farrow | 297,560 | * |
| Jung E. Choi | 464,409 | * |

| Name | Shares | Percent |
|---|---|---|
| David L. Johnson | 185,318 | * |
| Kim Smith-Whitley, M.D. | 19,051 | * |
| Scott W. Morrison | 101,850 | * |
| Deval L. Patrick | 22,375 | * |
| Mark L. Perry | 73,078 | * |
| Glenn F. Pierce, M.D., Ph.D. | 106,650 | * |
| Philip A. Pizzo, M.D. | 74,325 | * |
| Dawn A. Svoronos | 55,589 | * |
| Alexis A. Thompson, M.D., M.P.H. | 12,186 | * |
| Wendy L. Yarno | 76,650 | * |
| All directors and officers as a group (16 persons) | 3,476,561 | 5.2% |

39.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement gives an accounting of these awards as follows:

| Name | Options | | RSUs | | PSUs | | Total ($) | |
|---|---|---|---|---|---|---|---|---|
| | # | ($) | # | ($) | # | ($) | # | ($) |
| **Executive Officers** | | | | | | | | |
| Ted Love | 215,189 | 5,773,239 | 149,105 | 10,213,684 | 109,316 | 7,488,112 | 473,610 | 23,475,035 |
| Jeffrey Farrow | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| Jung Choi | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| David Johnson | 59,582 | 1,504,350 | 43,351 | 2,969,526 | 26,502 | 1,815,387 | 129,435 | 6,289,263 |
| Kim Smith-Whitley | 45,448 | 1,593,012 | 30,577 | 2,094,525 | 26,502 | 1,815,387 | 102,527 | 5,502,924 |
| Nazila Habibizad | 40,817 | 1,282,211 | 29,795 | 2,040,923 | 26,502 | 1,815,387 | 97,114 | 5,138,521 |
| Tricia Suvari | 59,582 | 1,504,350 | 41,458 | 2,839,890 | 26,502 | 1,815,387 | 127,542 | 6,159,627 |
| Carrie Krehlik | 57,360 | 2,216,508 | 39,640 | 2,715,340 | 26,502 | 1,815,387 | 123,502 | 6,747,235 |

**Directors**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Dawn Svoronos | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Mark Perry | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Glenn Pierce | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Alexis Thompson | 7,935 | 263,972 | 8,400 | 575,400 | — | — | 16,335 | 839,372 |
| Deval Patrick | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Philip Pizzo | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Wendy Yarno | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Scott Morrison | 2,800 | 129,360 | 3,600 | 246,600 | — | — | 6,400 | 375,960 |
| Willie Brown (director emeritus) | — | — | — | — | — | — | — | — |

40.     In addition, certain employment agreements with certain GBT executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash Severance ($) | Equity ($) | Benefits ($) | Total ($) |
|---|---|---|---|---|
| Ted Love | 2,427,750 | 23,475,035 | 63,000 | 25,965,785 |
| Jeffrey Farrow | 988,000 | 6,159,627 | 45,000 | 7,192,627 |
| Jung Choi | 958,000 | 6,159,627 | 15,000 | 7,132,627 |
| David Johnson | 988,000 | 6,291,318 | 45,000 | 7,324,318 |
| Kim Smith-Whitley | 1,020,000 | 5,504,979 | 45,000 | 6,569,979 |

41.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

1   as that information provides illumination concerning motivations that would prevent fiduciaries

2   from acting solely in the best interests of the Company's stockholders.

3       42.     Thus, while the Proposed Transaction is not in the best interests of GBT, Plaintiff

4   or Company stockholders, it will produce lucrative benefits for the Company's officers and

5   directors.

6   ***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

7       43.     On August 19, 2022, the GBT Board caused to be filed with the SEC a materially

8   misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed

9   to provide Plaintiff in his capacity as a Company stockholder with material information and/or

10  provides materially misleading information critical to the total mix of information available to

11  Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

12      *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*

13      *to the Proposed Transaction*

14       44.     Specifically, the Preliminary Proxy Statement fails to disclose material information

15  concerning the process conducted by the Company and the events leading up to the Proposed

16  Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

17          a.  Adequate disclosure as to why it was necessary to retain two financial advisors;

18          b.  Adequate disclosure as to what powers that the Transaction Committee had in

19              evaluating a potential transaction;

20          c.  Adequate disclosure as to why the Transaction Committee was not independent

21              in their review of the Proposed Transaction and allowed other board members,

22              including Company insiders, to participate in meetings of the Transaction

23              Committee;

24          d.  Whether the confidentiality agreements entered into by the Company with

25              Parent differed from any other unnamed confidentiality agreement entered into

26              between the Company and an interested third parties;

27

28

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Pfizer, would fall away; and

f.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning GBT's Financial Projections*

45.   The Preliminary Proxy Statement fails to provide material information concerning financial projections for GBT provided by GBT management to the Board, JP Morgan, and Centerview and relied upon by JP Morgan and Centerview in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

46.   Notably the Preliminary Proxy Statement reveals that as part of its analyses, JP Morgan reviewed, "certain internal financial analyses and forecasts prepared by or at the direction of the management of the Company relating to its business" prepared by Company management.

47.   Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that GBT management provided to the Board, JP Morgan, and JP Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

48.   With regard to the *Management Forecasts* prepared by GBT, the Preliminary Proxy Statement fails to disclose material line items for important metrics

a.   EBIT, including all underlying inputs, metrics, and assumptions, including specifically: interest expenses and taxes;

b.  Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: tax expense, depreciation and amortization, capital expenditures, changes in net working capital; and

c.  A specific definition for Net Operating Losses; as well as the inputs, metrics, and assumptions used to calculate this metric.

49.  The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.  This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51.  Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the JP Morgan and Centerview financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by JP Morgan*

52.  In the Preliminary Proxy Statement, JP Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.  With respect to the *Public Trading Multiples Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific metrics for each company compared;

b.  The equity value for the Company;

    c.   The Company's net debt;

    d.   The Company's net cash; and

    e.   The inputs, metrics, and assumptions used to select a FV/2026E Revenue Multiple reference range for the Company of 1.1x to 5.2x.

54.   With respect to the *Selected Transaction Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific date on which each transaction closed;

    b.   The value of each transaction compared;

    c.   The number of fully diluted outstanding shares for the Company; and

    d.   The inputs, metrics, and assumptions used to select a FV/4-Year Forward Revenue Multiple reference range for the Company of 2.6x to 5.4x.

55.   With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The range of terminal values calculated;

    b.   The inputs, metrics, and assumptions used to determine perpetual growth rates ranging from (50.0%) to (30.0%) for Oxbryta, GBT601 and inclacumab, 5.0% for research assets, and 2.0% for corporate overhead;

    c.   The inputs, metrics, and assumptions used to determine range of discount rates from 10.5% to 13.5%;

    d.   The weighted average cost of capital for the Company; and

    e.   The number of fully diluted outstanding shares for the Company.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

56.   In the Preliminary Proxy Statement Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

1    underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

2    valuations or evaluate the fairness opinions.

3           57.    With respect to the *Selected Public Company Analysis.*, the Preliminary Proxy

4    Statement fails to disclose the following:

          a.   The specific metrics for each company compared;

          b.   The inputs, metrics, and assumptions used to select an EV/2026E Revenue

               Trading Multiple range of 2.00x to 4.25x;

          c.   The specific Wall Street Consensus estimates consulted;

          d.   The specific Wall Street firms who authored such estimates; and

          e.   The Company's estimated net cash as of September 30, 2022.

11          58.    With respect to the *Selected Precedent Transaction Analysis*, the Preliminary Proxy

12   Statement fails to disclose the following:

          a.   The specific date on which each transaction closed;

          b.   The value of each transaction compared;

          c.   The inputs, metrics, and assumptions used to select a reference range of Four-

               Year Forward Revenue Multiples of 3.00x to 4.50x; and

          d.   The number of fully diluted outstanding shares for the Company.

18          59.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy

19   Statement fails to disclose the following:

          a.   The Company's opportunity cost of capital;

          b.   The inputs, metrics, and assumptions used to determine discount rates ranging

               from 10.5% to 12.5%;

          c.   The weighted average cost of capital for the Company;

          d.   The implied terminal value of the Company;

          e.   The estimated tax savings associated with forecasted future losses; and

          f.   The number of fully diluted outstanding shares for the Company.

27          60.    With respect to the *Analyst Price Targets Analysis*, the Preliminary Proxy

Statement fails to disclose the following:

      a.  The specific Wall Street research analyst reports consulted; and

      b.  The identity of the Wall Street research firms who authored each estimate.

61.    With respect to the *Precedent Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific transactions compared;

      b.  The value of each transaction compared;

      c.  The date on which each transaction closed; and

      d.  The inputs, metrics, and assumptions used to determine a Premiums Paid range of 50% to 100%.

62.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public GBT stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

64.    Plaintiff repeats all previous allegations as if set forth in full herein.

65.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

66.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

67.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

71.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of GBT' business, the information contained in its filings with the SEC, and its public

statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.  The Individual Defendants acted as controlling persons of GBT within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause GBT to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled GBT and all of its employees.  As alleged above, GBT is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 26, 2022                    **BRODSKY & SMITH**

                              By:   */s/ Evan J. Smith*
                                    Evan J. Smith, Esquire (SBN 242352)
                                    esmith@brodskysmith.com
                                    Ryan P. Cardona, Esquire (SBN 302113)
                                    rcardona@brodskysmith.com
                                    9595 Wilshire Blvd., Ste. 900
                                    Phone: (877) 534-2590
                                    Facsimile (310) 247-0160

                                    *Attorneys for Plaintiff*

COMPLAINT